UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERNON WILLIAMS,

        Petitioner,                               Case Number: 05-CV-74559

v.                                                   HON. ARTHUR J. TARNOW

HUGH WOLFENBARGER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Vernon Williams, a state inmate incarcerated at the Macomb Correctional Facility in New Haven, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for seven counts of first-degree criminal sexual conduct, one count of kidnapping, and one count of extortion. For the reasons set forth below, the Court denies the petition.

**I.    Facts**

Petitioner's convictions arise out of events which occurred at his home in Saginaw on November 1, 2001. Earline Parks testified that she had known Petitioner for many years, and had dated him when they were both teenagers, but had not dated him since then. On November 1, 2001, at approximately 6:00 p.m., she left her home to walk to a nearby store, when Petitioner stopped his vehicle beside her and offered her a ride. He went into the store with her and offered her a ride home. Parks testified that Petitioner informed her he first had to go home to change his clothes for work. She agreed to go with him and drank beer while he went into his bedroom to change his clothes.

Parks testified that a few minutes later, Petitioner entered the living room, naked, and asked her to have sex with him. She declined. Petitioner then grabbed her, punched her in the face, and forced her to perform fellatio. He punched her again and forced her to engage in oral and vaginal sex numerous times. Parks testified that, at one point in the night, she attempted to escape from the home to a neighbor's house, but Petitioner dragged her back to the house, threatening to hit her with a piece of wood which was outside the home. After dragging her back into the house, Petitioner repeatedly struck her on the back of the head, and choked her. He again forced her to have intercourse with him several times. Petitioner warned Parks that if she told anyone what he did he would harm one of her children. Sometime before 5:00 a.m., Petitioner fell asleep and Parks was able to escape the home. She walked home and then called the police. The police brought her to the hospital, where she learned that she was pregnant. In response to a prosecution question, Parks testified that she subsequently had a miscarriage. Parks testified she had never been to Petitioner's home prior to the assault.

Michigan State Police Sergeant Brian Cole testified that he interviewed Petitioner on January 28, 2002. Sergeant Cole testified that Petitioner said he asked Parks to have sex with him, she declined and he slapped her. Petitioner stated that she then agreed to have sex with him. Petitioner further stated that he and Parks both used cocaine that night and that Parks had agreed to trade drugs for sex.

Police Officer Daniel Hernandez testified that he responded to Parks' 911 call. Parks told Officer Hernandez that she had called Petitioner for a ride to the store at approximately 7:30 p.m. She said Petitioner had raped her several times and that she had tried to escape several

2

times, even making it across the street to a neighbor's house once, but Petitioner dragged her back to his home.

Christine Henne, a registered nurse trained as a sexual assault examiner, testified that she examined Parks on November 2, 2001. Henne testified that Parks was very upset and scared and had injuries that appeared to be consistent with what she told Henne had happened. She had injuries on her knee, buttocks, and back which were consistent with being dragged across a sidewalk. Her face was swollen, her back was tender, and she had numerous scratches. Henne did not smell any alcohol on Parks or see any obvious signs of drug or alcohol use.

Physician's Assistant Steven Berge testified that he examined Parks at the hospital. He testified that she informed him that she had been sexually assaulted, struck in the head and face, and had been dragged across the floor. Berge did not smell any alcohol on Parks' breath.

The defense presented four witnesses. Monique Lowes, Petitioner's niece, testified that in 1999 and 2000, she saw Petitioner and Parks together many times. They were often smoking crack cocaine and engaging in sexual relations. Lowes was not present on the night of November 1, 2001.

Ronnie Williams, Petitioner's brother, testified that Parks lived with Petitioner at his home for a short period of time and had been to his home frequently.

James Szenay testified that he was a co-worker of Petitioner's. Petitioner came into the office on the evening of November 1, 2001, looking for their boss, Ronald Moore. After finding out the boss was not there, Petitioner left.

Ronald Moore, Petitioner's boss, testified that Petitioner came to his house at

approximately 9:30 or 10:00 p.m., on November 1, 2001, to borrow some money. Moore lent him $200.

Petitioner did not testify in his own defense.

## II. Procedural History

Following a jury trial in Saginaw County Circuit Court, Petitioner was convicted of seven counts of first-degree criminal sexual conduct, one count of kidnapping, and one count of extortion. On July 1, 2003, he was sentenced as a fourth habitual offender to eighteen years, nine months to thirty years imprisonment for each of his convictions, all to be served concurrently.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claim:

> I. Defendant was denied a fair trial where the prosecution deliberately presented evidence that the complainant suffered a miscarriage a month subsequent to the date of the charged offenses, raising an inference that defendant's alleged conduct caused the miscarriage, in the absence of any evidence of a causal connection between the two events, or, in the alternative, was defendant denied his Sixth Amendment right to effective assistance of counsel by his trial attorney's failure to object to the evidence concerning the miscarriage?

Petitioner filed a *pro se* supplemental brief presenting the following additional claim:

> II. Defendant was denied a due process right when there was not hearing held or notice given to the habitual charge.

The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Williams, 250396 (Mich. Ct. App. Jan. 20, 2005).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was denied. People v. Williams, No. 128225 (Mich. Aug. 30, 2005).

4

Petitioner then filed the pending petition for a writ of habeas corpus, presenting the following claims:

> I. Defendant was denied a fair trial where the prosecution deliberately presented evidence that the complainant suffered a miscarriage a month subsequent to the date of the charged offenses, raising an inference that the defendant's alleged conduct caused the miscarriage, in the absence of any evidence of a causal connection between the two events.
>
> II. Defendant was denied his Sixth Amendment right to effective assistance of counsel by his trial attorney's failure to object to evidence concerning the miscarriage.

## III. Analysis

### A. Standard of Review

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410-11.

**B.     Admission of Testimony Regarding Miscarriage**

In his first claim for habeas corpus relief, Petitioner argues that the prosecutor improperly elicited testimony regarding Parks' miscarriage.

Respondent argues that the first claim is procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003), *citing* Lambrix v. Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix, 520 U.S. at 525, 117 S. Ct. at 1523. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

"Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994), *citing* Fuson v. Jago, 773 F.2d 55, 59 (6th Cir. 1985). Only "[w]hen an evidentiary ruling

6

Williams v. Wolfenbarger, No. 05-74559

is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.2003).

The last state court to address this claim, the Michigan Court of Appeals, although holding that the issue was not preserved for appellate review, addressed the merits of this claim and held that the evidence was not properly admitted, but the error was harmless. The Michigan Court of Appeals reasoned that evidence of a miscarriage could establish mental anguish (which would satisfy the "personal injury" element of CSC I) if the miscarriage was shown to be related to the rape. Because the prosecutor failed to present any evidence of a causal connection linking the rape and the miscarriage, the Court of Appeals held that evidence of the miscarriage, and the related inference that it was caused by the rape, were irrelevant and more prejudicial than probative. The state court proceeded to analyze whether the error was harmless:

> Although the admission of the challenged evidence was in error, we must reverse only if defendant displays that he is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. . . There was a multitude of evidence apart from the challenged evidence that illustrated the victim's personal injuries as defined by M.C.L. 750.520a(1). The victim testified to both physical and emotional trauma she experienced as a result of the assault. The victim testified that in addition to the sexual assault that included multiple penetrations, defendant threatened her life, hit, pushed, grabbed, and choked her, and also dragged her naked body across the street after she tried to escape. Medical professionals confirmed that the victim had swelling and bruising on her face, and abrasions and scratches on her back, neck, knee, and elbow consistent with being dragged. A sexual assault nurse examiner also testified that the victim's mental condition was consistent with those who have been victims of sexual assault. The victim also testified that she had problems trusting people, especially men, since the assault. In light of the plethora of record evidence establishing the elements of CSC I, M.C.L. 750.520b(1)(f), we are not convinced that defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings.

Williams, slip op. at 3.

Based upon all of the factors considered by the Michigan Court of Appeals, the weight and nature of other evidence related to personal injury, the relative brevity of the reference to the miscarriage, the Court finds that the admission of this testimony, even if erroneous under state law, was not so egregious as to deprive Petitioner of his fundamental right to a fair trial.

**C.     Ineffective Assistance of Counsel Claim**

Petitioner next argues that his attorney was ineffective in failing to object to the admission of the evidence regarding the victim's miscarriage.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Strickland, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. Strickland, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must

8

overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Id.

The last state court to issue a reasoned opinion on this claim, the Michigan Court of Appeals, held that trial counsel erred in failing to object to the admission of this evidence. Nevertheless, the court of appeals held that counsel was not ineffective because Petitioner was not prejudiced by counsel's failure to object. The court of appeals reasoned that, apart from the challenged evidence, there was a multitude of evidence supporting Petitioner's convictions. The court pointed to Parks' testimony regarding the assault and her resulting physical and emotional injuries, and the testimony from two medical professionals that Parks suffered swelling, abrasions, scratches, and other injuries which were consistent with her version of what happened that night.

While counsel certainly should have objected to the testimony regarding Parks' miscarriage, the Court finds that the state court's finding that Petitioner was not prejudiced by his counsel's failing was not contrary to or an unreasonable application of Strickland. As noted by the court of appeals, the prosecution's evidence was strong and the defense weak. Some evidence was presented to contradict some of the details of the victim's testimony, such as whether she had been to Petitioner's home previously, however, her most critical testimony regarding the circumstances of the assault were corroborated by the medical testimony. Apart

9

from the testimony about the miscarriage, ample evidence was presented, including photographs, to sustain the physical injury element of the criminal sexual conduct charges. The Court does not believe that any reasonable probability exists that, had the testimony regarding the miscarriage not been elicited, the result of the proceeding would have been different.

**IV. Conclusion**

Petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States. Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated: August 23, 2007


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 23, 2007, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary